UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) Criminal No. 22-cr-10005-DPW |
| DAVID SCHOTTENSTEIN, | ) |
| Defendant. | ) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO
STRIKE THE GOVERNMENT'S SENTENCING MEMORANDUM**

In public statements before his sentencing, in his pre-sentence interview with the Probation Office, in his objections to the Pre-Sentence Investigation Report ("PSR"), and throughout his sentencing submission, defendant David Schottenstein has claimed that he "recognized on his own that his conduct was wrong" and "ceased his illegal securities fraud several years before" the government began its investigation. (PSR ¶ 105). This claim is at best, incomplete, and at worst, misleading. Schottenstein failed to note that, in late June 2019, in a contentious telephone call with a senior executive of Green Growth Brands ("GGB")—a publicly traded company controlled by the Schottenstein family—he was warned not to trade in the company's shares while in possession of inside information obtained from his family members, and that doing so was against the law.

Confronted with these facts in the government's sentencing memorandum, the defendant moves to strike the memorandum in its entirety, claiming that: (1) the government failed to disclose the wiretap application and order that resulted in the call's interception ten days before his sentencing under 18 U.S.C. § 2518(9); (2) he was prejudiced by the belated disclosure because,

with additional notice, he would have moved "to inspect the interceptions as is his right," and offered an innocent explanation for the call and his trading; and (3) he did not, in any event, engage in insider trading in GGB, because he sold the company's shares not "on the basis" of inside information, but instead because he is purportedly "chronically illiquid," and needed the money. Dkt. 73 at 1, 6–8. The defendant's contentions are without merit and his motion should be denied.[1]

## Argument

I. Applicable Law

Title 18, United States Code, Section 2518(9) provides that the content of any Title III wiretap "shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding . . . unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved." The purpose of the provision is "to give an aggrieved party such as [the defendant] the opportunity to make a motion to suppress." *United States v.*

---

[1] Schottenstein separately complains that the government has, to date, failed to provide a "formal inventory" of the wiretap. Dkt. 73 at 5. The government was not required to do so, however, because the issuing court suspended the inventory requirement pending further order of the court, in light of the harm that notice would cause to an ongoing investigation. The government has produced the delayed notice Order to the defendant. In any event, even a failure to comply with Title III's inventory requirement would not provide grounds for suppression absent actual prejudice that cannot be cured. *See United States v. Donovan*, 429 U.S. 413, 439 (1977) ("we do not think that postintercept notice was intended to serve as an independent restraint on resort to the wiretap procedure"); *United States v. Harrigan*, 557 F.2d 879, 884 (1st Cir. 1977) ("suppression is an appropriate remedy when a defendant can show that the failure to serve an inventory notice caused him actual prejudice and that the prejudice which resulted cannot otherwise be cured"); *see also United States v. Rodrigues*, 850 F.3d 1, 8–9 (1st Cir. 2017) (no prejudice where government failed to include defendant as target subject where issuing court "delayed inventory notice to subject targets at the expiration of each wiretap until further order of the court" and defendant received notice following indictment); *United States v. Robinson*, 513 F. Supp. 2d 169, 188 (M.D. Pa. 2007) (same).

*Winter*, 663 F.2d 1120, 1154 (1st Cir. 1981), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52 (1997); *see also United States v. Goodwin*, 131 F.3d 132 (2d Cir. 1997) (same).

There are two principal exceptions to the ten-day notice requirement.  <u>First</u>, the requirement may be waived if the Court "finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information."  18 U.S.C. § 2518(9).  <u>Second</u>, wiretap evidence may be introduced absent advance notice where it is used for purposes of impeachment. *See Winter*, 663 F.2d at 1154 ("[T]he interception, even if not legally authorized, could be used for impeachment purposes.  It is now firmly established that illegally obtained evidence may be used to impeach a defendant on cross-examination.").

In addition, a lack of notice does not, by itself, require suppression, and courts have approved the introduction of wiretap evidence despite late notice absent actual prejudice to the defendant or bad faith on the part of the government.  *See United States v. Crumpton*, 54 F. Supp. 2d 986, 1012 (D. Colo. 1999) ("Title III Statute provisions which regulate notice and inventory do not play a central role in the wiretap statutory scheme.  Therefore, violations of this provision do not rise to the level of a 'constitutional violation' and do not warrant suppression absent a clear showing of prejudice to the defendant."); *see also United States v. Owen*, 966 F.2d 1445, 1992 WL 132852, *1 (4th Cir. 1992) ("Though the statute does not provide a remedy for noncompliance with § 2518(9), suppression of evidence is generally not required for 'technical violations' of the federal wire interception statute in the absence of bad faith conduct on the part of the government."); *United States v. Melendez-Carrion*, 790 F.2d 984, 994 (2d Cir. 1986) (no prejudice where "[t]he bulk of the required material was furnished a week before the detention hearing of the first defendant, and all defendants were able to make a motion to suppress the results of the

electronic surveillance."); *Winter*, 663 F.2d at 1154 ("We believe that any technical violation of 18 U.S.C. § 2518(9) did not prejudice [the defendant] in any way.").

A defendant who declines a continuance of the proceedings cannot ordinarily demonstrate prejudice arising from a belated disclosure under section 2518(9). *See* S. Rep.1097, 90th Cong. 2d Sess., 1968 US Code Cong & Admin News, at 2195 ("Ordinarily, prejudice would be shown only where it was established that the trial could not be reasonably recessed in order that the motion to suppress could be fully heard. . . ."); *see also United States v. Carson*, 520 F. App'x 874, 892 (11th Cir. 2013) (no prejudice where court "informed defense counsel that the trial could be pushed back if necessary so that the defense could fully review and use the unredacted copies" of wiretap application and orders but "defense apparently did not take up the district court's offer"); *Owen*, 1992 WL 132852, at *2 (no prejudice where defendants "declined the opportunity to request additional time to explore any problems with confidential informants who provided information in support of the wire interception. Thus, it is beyond peradventure that trial counsel was not interested in preventing actual prejudice and instead, deliberately pursued a tactical course."); *United States v. Valenzuela*, No. 10-CR-3044-WQH, 2010 WL 3584530, *3 n.5 (S.D. Cal. Sept. 8, 2010) (no prejudice from consideration of wiretap evidence presented at detention hearing, despite belated disclosure under Section 2518(9), where court "would have continued the detention hearing for ten days," but "Defendant requested that the Court to go forward with the hearing on that day").

  II. <u>Section 2518(9) Does Not Preclude the Use of the Wiretap Call in this Proceeding</u>

The government produced the wiretap application and order in this case four days prior to the sentencing hearing—as soon as possible upon the defendant's request—but not ten days, as section 2518(9) contemplates. The government's non-compliance with the provision, and the

resulting six-day delay in providing notice, was inadvertent, precipitated by the unusual procedural posture of this case. At the same time, it is unclear that the notice provisions of section 2518 apply, because the government's reference to a wiretap call in its sentencing submission was for the purpose of impeaching statements the defendant made in anticipation of sentencing. And even if section 2518 does apply, the defendant—who declined the government's offer of an assented-to continuance of the proceeding and who has, in any event, had ample time to respond to the proffered evidence (and has, in fact, done so through his motion to strike)—has not been prejudiced by the belated notice. That is particularly true because the government would be entitled to offer the wiretap at sentencing, and the Court would be entitled to consider it, even if it were ultimately suppressed (a remedy that the defendant does not seek). Accordingly, and for the reasons explained in further detail below, in such circumstances, there is no bar on the introduction of the wiretap evidence at the defendant's sentencing.

First, to the extent that the ten-day notice provision of section 2518(9) applies here, the government's failure to produce the wiretap application and order a full ten days prior to the sentencing hearing was inadvertent. In the ordinary case, the government would have produced the wiretap evidence at the outset of the proceedings, as part of automatic discovery—and indeed, the government *did* produce the wiretap and supporting materials to the defendant's co-conspirators in automatic discovery in that related proceeding.[2] The government did not produce

---

[2] The wiretap was also discussed in a public filing by the defense in the case against Schottenstein's co-conspirators. *See United States v. Shapiro*, 22-cr-10006-WGY, Dkt. 86 at 4 ("A prior wire interception of Schottenstein's phone revealed discussions between he and his relative about Company M."). That same filing specifically referenced an intercepted call between Schottenstein and the director of business development at GGB—the same individual with whom Schottenstein spoke in the call cited in the government's sentencing memorandum (though not the same call). *See id.* Prior to the submission of the defendant's sentencing memorandum, Schottenstein, through counsel, requested that the government produce "[a]ny recorded calls or

the wiretap in this case because, as the defendant notes, he waived discovery and entered into a cooperation agreement and a plea agreement. *See* Dkt. 72 at 1 ("David flew to Boston and proffered with investigators, confessing to his crimes without the benefit of any discovery."); *id*. at 23 ("He confessed to his crime. He did so without the benefit of any discovery. . . . "); *id*. at 27 ("David then pled guilty to an Information before this Court without the benefit of *any* discovery. . . .") (emphasis in original).

Likewise, in the context of the defendant's cooperation, the government did not confront him with the wiretap calls precisely because it wanted Schottenstein to proffer, and testify, from his memory, and not to regurgitate (or limit his testimony to) what he heard on tape. This is textbook practice for preparing cooperating witnesses. *See* Hon. Stephen S. Trott, *Words of Warning for Prosecutors Using Criminals as Witnesses*, 47 Hastings L. J. 1381, 1404 (1996) ("Do not feed the witness key information. First, let the witness tell the complete story on his or her own; then ask any questions needed to fill in the gaps."). The government also anticipated that when Schottenstein later testified at trial about his and his co-conspirators' crimes, the wiretap calls would, if introduced, independently corroborate his testimony, allowing him to avoid the accusation that he was simply parroting (or embellishing upon) the government's other evidence. *See id*. at 1406 ("The key to whether or not a jury will accept the testimony of a criminal is the extent to which the testimony is corroborated."). It was this same principle that motivated the government's instruction to the defendant that he not read about the case or review the pleadings. Accordingly, when the government cited a call from the wiretap in its sentencing memorandum, it did not consider the potential applicability of section 2518(9)—a provision that is simply not at

---

text messages that tend to diminish David's culpability with respect to trading in the stocks charged in the Information."

6

issue in the vast majority of cases. When the defense requested the underlying wiretap application and order, two days after the government's sentencing memorandum was filed, the government promptly moved to unseal those documents for the purpose of producing them to the defense, and disclosed the unsealed documents four days ahead of the proceeding. The government also offered to assent to a motion for a brief continuance of the sentencing hearing, so that the defendant would have the full ten days to review the materials and to file a motion to suppress, as Section 2518(9) contemplates. But as the defendant concedes, he "is not trying to suppress evidence," which is the only actual remedy that the statute provides. Dkt. 73 at 9.

<u>Second</u>, and notwithstanding the foregoing, it is not clear that section 2518(9) even applies here, because the government's reference to the wiretap call was for the purpose of impeaching statements the defendant made in advance of sentencing and again in the PSR. In those statements, the defendant contended that "he recognized on his own that his conduct was wrong," and stopped it as a result. (PSR ¶ 105).[3] In fact, the wiretap call makes clear that the defendant was warned against continuing to trade while in possession of inside information obtained from his family members. And far from "recogniz[ing] on his own that his conduct was wrong," the defendant pushed back against the warning and *denied* that trading stock while in possession of inside information was wrong, prompting the GGB executive to accuse him of "playing coy." More than 40 years ago, the First Circuit found that the use of a wiretap recording for impeachment purposes was permissible, even in the context of a failure to provide ten days' notice pursuant to section

---

[3] Notably, these comments are not consistent with statements the defendant made in his sentencing video in multiple ways. For one, he says he needed "an alarm clock to wake up . . . to be rocked . . . to really wake you up," and stop such conduct. Dkt. 72, Ex. D at 9:17–9:24. He also contends that it was his wife who told him stop. *Id*. at 0:44–59.

7

2518(9). *See Winter*, 663 F.2d at 1154 ("[T]he interception, even if not legally authorized, could be used for impeachment purposes.").

In his motion, the defendant effectively concedes that section 2518(9)'s notice provision does not apply in the context of impeachment, but argues that the government's use of the call was not proper impeachment because the defendant first made the challenged claim some time ago. But the relevant question for purposes of section 2518 is not when the defendant made the claim, but whether the government used the intercepted call to impeach it. Here, there can hardly be another reading of the government's reference to the call. Indeed, in *Winter* itself, the First Circuit noted that the relevant intercept was "ambiguous at best: it could have been interpreted either as corroborative or contradictory of [the defendant's] testimony or as being of no consequence." *Id.* Still, the Court found, that mattered little where the government's intention in using the call was to impeach the defendant's testimony. *Id*.

The defendant's concession is relevant for another reason. Beyond his public statements, and his statement in the PSR, the defendant *repeats* his contention that he stopped insider trading of his own accord in his sentencing memorandum and in the video submission that accompanies it. *See* Dkt. 72 at 3 (contending that the defendant "stopped insider trading on his own even though he was repeatedly exposed to material non-public information"); *id*. at 21 n.17 (same); *id*. at 22 (same); *id*. at 24 (same); *id.* at 40 (same); *id*., Ex. D at 1:03–1:05 ("He did it on his own. He didn't even have to get caught to stop."). Indeed, he goes so far as to suggest—incorrectly—that "the FBI was so shocked at this uncommon turn around that they worried their investigation had been compromised." *Id*. at 3; *see also id*. at 22 (same). Accordingly, as the defendant effectively concedes, the wiretap call would have been admissible without advance notice to impeach those

8

statements in his filings. This fact simply underscores that the government's use of the wiretap call was proper impeachment, and was not precluded by section 2518(9).

Third, even if section 2518(9) applies in the context of these proceedings, the defendant was not prejudiced by the six-day belated disclosure. As noted, the government produced the wiretap application and order four days before the scheduled sentencing hearing, and offered to assent to a continuance of the hearing to provide the defendant a full ten days to review the materials and file a motion to suppress. The defendant declined, citing inconvenience to observers who wish to attend the sentencing. *See* Dkt. 73 at 11 (objecting to a continuance "out of respect for all those who have traveled so far to support him"). The defendant has also disclaimed any intention to move for suppression. *See id*. at 9 ("The defense is not trying to suppress evidence."). In such circumstances, the defendant cannot contend that he was prejudiced by the delayed disclosure, as the statute's legislative history and multiple cases construing it make clear. *See Carson*, 520 F. App'x at 892; *Owen*, 1992 WL 132852, at *2; *Valenzuela*, 2010 WL 3584530, at *3 n.5; *see also* S. Rep. 1097, *supra*, at 2195.

There is no prejudice for the additional reason that, even if the defendant were to successfully move to suppress the wire based on some infirmity in the underlying affidavit, that would not preclude the government's use of wiretap evidence at sentencing. That is because "the rules concerning admissibility of evidence in criminal trials do not apply" at sentencing. *United States v. Shea*, 749 F. Supp. 1162, 1169 (D. Mass. 1990) (rejecting section 2518(9) challenge to evidence of intercepted communications at bail hearing because, *inter alia*, "the rules concerning admissibility of evidence in criminal trials do not apply in a detention hearing under the Bail Reform Act"); *United States v. Baratta*, 360 F. Supp. 512, 514 (S.D.N.Y. 1973) ("The sentencing judge may consider, and if impressed give weight to, material involving a defendant which would

9

be inadmissible at trial . . . or wiretaps previously suppressed."); *see also United States v. Stark*, 499 F.3d 72, 80 (1st Cir. 2007) ("suppressed evidence may generally be considered at sentencing"); *United States v. Acosta*, 303 F.3d 78, 86 (1st Cir. 2002) (same).[4]

Finally, there is no prejudice for yet another reason: the defendant has had ample opportunity to respond to the government's reference to the wire call, and has, in fact, done so in the course of a 12-page motion to strike and the supporting documents appended to it.[5] In that motion, the defendant contends that he did not trade in shares of GGB based on inside information and that it is not, in any event, illegal to trade while *in possession* of inside information absent the use of information. Dkt. 73 at 7–9. For purposes of this motion, the substance of those arguments is less relevant than the fact that the defendant has had an opportunity to make them—and was, accordingly, not "sandbagged," as he contends. *Id*. at 6.

Nonetheless, the defendant's arguments miss the mark. As an initial matter, the government did not cite the wiretap call for the purpose of suggesting that the defendant violated the law by trading in GGB in 2019.[6] The government cited the call to demonstrate that, contrary

---

[4] The defendant contends that, with additional notice, he "would have moved the court to inspect the interceptions, as is his right." Dkt. 73 at 6. But the defendant is not precluded from filing such a motion and could do so even now. His decision not to do so is strategic. Moreover, the government has produced to the defendant not only the recording cited in its sentencing memorandum, but also a second intercepted call that the defendant, through counsel, requested over the weekend. In any event, the defendant does not have a "right" to inspect the interceptions, as he contends. The decision whether to permit such an inspection is within the Court's discretion. *See* 18 U.S.C. § 2518(10).

[5] Even as he complains about the government's use of the call, the defendant argues that the wiretap was "apparently fruitless," and notes "that the government did not charge a single crime based on the wiretaps." Dkt. 73 at 6. He omits to note that in his proffer interview, he told the government that he and Bortnovsky specifically discussed the need to avoid talking about "sensitive inside information over the phone because you didn't know who was listening," and how they even went to such lengths as turning off their phones and leaving them in another room when they met to discuss in person.

[6] Although the defendant contends that he sold GGB shares to generate cash for a real estate investment, during the period when he was selling those shares in May and June 2019, he was

to Schottenstein's contention that he "recognized on his own that his conduct was wrong," (PSR ¶ 105), he was *warned* by an executive at a Schottenstein family company who had discovered his trading that he should not trade in the company's shares while in possession of inside information obtained from family members, and that doing so was against the law. From this call, a reasonable inference is that the defendant—far from having a sudden moral awakening in the midst of a long-running insider trading conspiracy—became alarmed that if he continued to break the law, he would get caught.

Likewise, the defendant's contention that there is a "use" requirement for insider trading liability is puzzling, insofar as he was charged with trading while in possession of inside information, *see* Dkt. 1 at 12 (charging defendant with conspiring to trade securities "while in possession" of material nonpublic information), and pled guilty to that crime, *see* Dkt. 18 at 24–25 (Rule 11 colloquy in which government describes defendant's conspiracy to execute securities trades "while in possession of material non-public information, in violation of Title 18, United States Code, Section 1348"); *id*. at 28 (THE COURT: "You understand, by agreeing with what he said and indicating that you don't have any disagreements at all, that you've admitted to the charges that are laid here? THE DEFENDANT: I do, Your Honor."). The defendant's counsel similarly affirmed that the defendant's plea based on the government's factual recitation was valid. *See id*. at 28.[7]

---

buying shares of two other Schottenstein family companies: American Eagle Outfitters ("AEO") and Designer Brands, Inc. ("DBI"). Schottenstein told the government during his initial proffer interview that, in 2019, he learned from his cousin—a member of the DBI board of directors—that the Schottenstein family planned to take DBI private, and that he bought shares of DBI based on this information and also provided the information to Bortnovsky, who traded on it. During his second proffer interview, the defendant told the government that he "constantly pumped" his cousin for earnings information about AEO and DBI.

[7] Moreover, while the First Circuit has declined to decide whether insider trading prosecutions require proof of knowing possession or use of inside information, *United States v. Kanodia*, 943 F.3d 499, 510 (1st Cir. 2019), the Second Circuit has repeatedly affirmed the "knowing possession"

Accordingly, as the foregoing makes clear, the government's reference to the wiretap call in its sentencing memo does not implicate section 2518(9) because the government cited the call for the purpose of impeaching the defendant's own statements. And, even if section 2518(9) is implicated, the government's six-day delayed notification was inadvertent, and the defendant has suffered no prejudice. Indeed, the defendant cites not one case where a pleading was struck for a technical violation of section 2518(9), and he has abandoned the only actual remedies that the statute contemplates: a continuance or suppression.

## Conclusion

For the foregoing reasons, the government respectfully requests that the defendant's motion be denied.

Respectfully submitted

RACHAEL S. ROLLINS
United States Attorney

By: /s/ Stephen E. Frank
STEPHEN E. FRANK
SETH B. KOSTO
Assistant U.S. Attorneys

Date: March 20, 2023

---

standard, *see United States v. Rajaratnam*, 719 F.3d 139, 159 (2d Cir. 2013); *see also United States v. Teicher*, 987 F.2d 112, 120 (2d Cir. 1993) ("Unlike a loaded weapon which may stand ready but unused, material information cannot lay idle in the human brain."). Rule 10b5-1 itself provides that a trade is made "on the basis of" inside information "if the person making the purchase or sale was aware of the material nonpublic information" at the time of the transaction. 17 C.F.R. § 240.10b5-1(b). *But see United States v. Smith*, 155 F.3d 1051, 1066–69 (9th Cir. 1998) (concluding that the "weight of authority supports a 'use' requirement"); *SEC v. Adler*, 137 F.3d 1325, 1332–39 (11th Cir. 1998) (affirming "use" standard but calling the issue "a difficult and close question").

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                                  */s/ Stephen E. Frank*
                                                  STEPHEN E. FRANK
                                                  Assistant U.S. Attorney

Date: March 20, 2023